IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAMAR HILL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:15-cv-00453-MTT-CHW |
| | : | |
| Warden ERIC SELLARS, | : | Proceedings Under 42 U.S.C. § 1983 |
|     Defendant. | : | Before the U.S. Magistrate Judge |
| | : | |

### REPORT AND RECOMMENDATION

Plaintiff, Jamar Hill, who is presently confined at Hancock State Prison, filed a pro se civil rights complaint under 42 U.S.C. § 1983 on December 7, 2015. Doc. 1. Plaintiff's complaint arises out of his confinement in "Tier II" administrative segregation. Doc. 1, p. 5. Plaintiff alleges that he has been held in Tier II for more than twenty-four (24) months in violation of a time limitation imposed by Georgia Department of Corrections Standard Operating Procedure.

Currently before the Court is Defendant's Motion to Dismiss. Defendant seeks dismissal, arguing that (1) Plaintiff has failed to exhaust his administrative remedies, (2) the case is moot in light of a change in DOC policy extending the maximum length of time for which individuals can be held in Tier II segregation, (3) Plaintiff fails to state a claim upon which relief may be granted, and (4) Plaintiff is not entitled to the relief he seeks. Doc. 15-1, p. 1. Because Plaintiff has failed to allege a plausible due process claim, it is **RECOMMENDED** that Defendant's Motion to Dismiss be **GRANTED** (Doc. 15) and Plaintiff's Complaint be **DISMISSED**.

### BACKGROUND

The events underlying Plaintiff's complaint occurred at Hancock State Prison when Plaintiff was transferred from the Special Management Unit at the Georgia Diagnostic and

Classification Prison into "Tier II" administrative segregation on November 7, 2013. Doc.1. According to Plaintiff, Georgia Department of Corrections policy states that incarcerated individuals can be held in Tier II for a maximum of twenty-four continuous months. Plaintiff's twenty-four month anniversary in Tier II occurred on November 13, 2015, but he was not released, in violation of the policy. He contends that Defendant Sellars is responsible for the decision to continue his confinement in Tier II. *Id*. at 5

Plaintiff has attached to his complaint the Georgia Department of Corrections Standard Operating Procedures Policy Number IIB09-0003, effective March 17, 2015, and entitled "Administrative Segregation – Tier II." Doc. 1-2. The purpose of the policy is to "protect staff and offenders from offenders whose violent acts have been repetitive and serious and to confine in the most appropriate, restrictive option offenders who present a serious threat to escape." *Id*. at 1. The Tier II program is one aspect of a comprehensive "stratification plan" designed to manage institutional conduct and the "programmatic need[s]" of those within the program. "The maximum length of time that an offender can be assigned to the Tier II Program is twenty four (24) months." *Id*.

Plaintiff alleges that the living conditions attendant to confinement in Tier II are "harsh" and include limited access to the law library, hygiene products, recreation, and programs for parole eligibility. Doc.1, p. 5. Plaintiff has attached to his complaint an exhibit entitled "Administrative Segregation: Tier II Conditions and Privileges." Doc. 1-1. Construed liberally, this document appears to be a table outlining the restrictions those confined in Tier II experience. The table is divided into four columns respectively entitled "Phase 1," "Phase 2," "Phase 3," and "Phase 3+." Inmates confined in Tier II face the most restrictive conditions of living at Phase 1. While in Phase 1, inmates do not have access to the commissary other than for legal supplies;

may not have personal property, including hygiene items; may only make one fifteen minute phone call per month; are permitted only five hours of recreation per week; may not watch television; are permitted only one non-contact visitation per month for a maximum duration of two hours; may only wear "State issued jumpsuits and footwear;" may participate in "in-cell programming;" may receive personal and legal mail; may not receive "SecurePak/Holiday Packages;" and may access the library only for legal purposes. Doc. 1-1, p. 1.

The restrictions on each area of living imposed at Phase 1 become progressively more relaxed at each following phase. At phase 3+, inmates are allowed all personal property with some exceptions; up to $40 in the commissary; three fifteen minutes calls per month; three non-contact 2 hour visits per month; "Life skills and Re-Entry" programming as available; "personal/legal mail;" all "SecurePak/Holiday Packages;" and general as well as legal access to the library. All other restrictions remain unchanged. *Id.*

## EXHAUSTION

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

## AVAILABLE ADMINISRTATIVE REMEDIEWS

The uncontested available administrative remedies during the period relevant to this case include the Georgia Department of Corrections ("GDC") inmate grievance procedure. According to GDC Standard Operating Procedure, each inmate entering the GDC receives an explanation of the inmate grievance procedure and is given a copy of the Orientation Handbook for Offenders which contains procedural instructions related to the GDC grievance system. Doc. 15-4, p. 5.

The GDC inmate grievance procedure contains two steps. At step one, the "Original Grievance," an inmate is required to complete a grievance form, which is available upon request at the control room for each GDC living unit. Id at 5, 8. In order to grieve an incident, an inmate must obtain this form, legibly write his complaint and requested relief, and deliver the form to a counselor. *Id*. at 8. The counselor then forwards the grievance form to a grievance coordinator after providing the inmate with a grievance receipt.

Step two of the grievance procedure governs the inmate grievances following an initial adverse decision. After a grievance has been denied at the initial level, an inmate must then file a central office appeal. *Id*. at 10. In the event that inmate does not receive a response at step one within forty calendar days from the date of delivery, an inmate may file a Central Office Appeal. *Id*. at 12. The inmate has seven calendar days to do so by obtaining, completing, and then submitting a central office appeal form to a grievance counselor. *Id*. at 11. On receipt of the appeal, the grievance counselor provides an inmate with a copy of the appeal form and the original is sent to "Central Office." *Id*. at 12. After receipt of the grievance appeal, the "Commissioner or his/her designees has 100 calendar days" to deliver a decision. *Id*. at 13.

## ANALYSIS

Pursuant to the *Turner* test discussed above, the Court must first look to the factual allegation contained in defendant's motion to dismiss "and those in plaintiff's response" and determine if they conflict. After being notified by the Court of his duty to respond to Defendant's Motion to Dismiss, Plaintiff filed a one line response, stating: "I, Jamar Hill (Plaintiff) oppose to the defendant Mr. Eric Sellars motion to dismiss." Doc. 19. Within his complaint, Plaintiff alleged only that "I filed a confidential grievance with my appointed counselor." Doc. 1, p. 3. Plaintiff provided no details concerning what was contained in the grievance, but checked a box

5

stating that the grievance contained facts relating to his complaint. *Id*. Defendant concedes that Plaintiff filed a grievance in accordance with step one of GDC grievance procedure, but argues that Plaintiff filed this action prior to completing the appeal process.

Plaintiff's one line response is not sufficient to create a conflict in the party's specific factual allegations, but Plaintiff does oppose Defendant's Motion. At step one of *Turner*, Plaintiff's allegations must be taken as true. Taking Plaintiff's version of facts as true, the Court cannot determine whether he exhausted his administrative remedies.

Plaintiff "is not required to plead or demonstrate exhaustion in the complaint." *Donawa v. Gilmore*, 559 F. App'x. 968, 968 (11th Cir. 2014) (citing *Jones v. Bock*, 549 U.S. 199, 216-17 (2007). Instead, exhaustion is an affirmative defense that Defendants have the burden of "pleading and proving." *Bryant v. Rich*, 530 F.3d 1368, 1381 n.4 (11th Cir. 2008). Plaintiff's failure to dispute Defendant's specific factual allegations, therefore, may not be sufficient to grant Defendant's Motion, as the burden to prove the affirmative defense of exhaustion is on the Defendant. See e.g. *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000); *Boazman v. Economics Laboratory, Inc*., 537 F.2d 210, 213 (5th Cir. 1976) (failure to respond in summary judgment context does not relieve movant of burden); *Boyd v. Peet*, 249 F. App'x 155 (11th Cir. 2007) (Plaintiff did not abandon claims by failing to adequately address them in his response brief to defendant's motion for judgment on the pleadings); *Graham v. Chase Home Finance*, 2010 WL 507159, at *1 (N.D. Ga. 2010) (considering "merits" of unopposed motion to dismiss because "an unopposed motion does not mean the moving party automatically prevails."). Therefore, the Court will proceed to step two of the *Turner* analysis.

Defendant's Motion to Dismiss includes the Affidavit of Tamikia Mahoney, a grievance coordinator at Hancock State Prison, along with a copy of GDC standard operating procedure

and Plaintiff's grievance history. Ms. Mahoney indicates that Plaintiff has filed sixteen grievances while confined at Hancock State Prison and that Defendant's Exhibit B is a copy of Plaintiff's grievance record. Doc. 15-3, p.4. Grievance number 208881 was filed by Plaintiff on November 20, 2015, and complains of his continued confinement in Tier II administrative segregation in excess of the twenty-four month limitation imposed by standard operating procedure. Doc. 15-5, p. 4. Plaintiff received a response to the grievance on February 11, 2016, which stated "the offender has not been cleared by the Regional Officer to be released for the Tier Program. This grievance is dismissed." Doc. 15-5, p. 5. Plaintiff then filed an appeal on February 12, 2016, seeking to be released back into general population. Doc. 15-5, p. 6. Defendant shows that under Georgia's grievance procedure, the commissioner has 100 days from the date of receiving a grievance appeal to deliver a decision. Doc. 15-4, p. 13. Plaintiff filed the instant action on December 7, 2015, while his grievance was still pending. Defendant thus argues that Plaintiff failed to exhaust his administrative remedies prior to filing the current action. Indeed, if Plaintiff was required to follow the standard grievance procedure and his grievance was still pending at the time he filed the current action, he has not exhausted his administrative remedies. *See e.g. Tyner v Donald*, 2007 WL 842131, at *2. (M.D. Ga. 2007).

Defendant's evidence indicates, however, that Plaintiff's placement in Tier II is a non-grievable issue. Georgia Department of Corrections Standard Operating Procedure IIB05-0001 states that an offender may not file a grievance about the following issue:

   a. Matters that do not affect the offender personally.
   b. Matters over which the Department has no control, including parole decisions, sentences, probation revocations, court decisions, and any matters established by the laws of the state.
   c. Disciplinary actions, including any punishment, fees, or assessments. The disciplinary appeal procedure is located in GDC SOP IIB02-0001.
   d. Involuntary assignments to administrative segregation. The procedure to appeal such assignment is located in GDC SOP IIB09-0001

- e. Co-pay charges assessed for health care. The procedure to appeal such charges I located in GDC SOP VH03-0003 (Inmate/Probationer Health Concerns or Complaints).
- f. Transfers of offenders between institutions.
- g. Changes to housing assignments, program assignments, or work assignments, unless there is an alleged threat to offender's health and safety.

Thus, according to Defendants own evidence, GDC policy states that the normal grievance procedure is not available to Plaintiff concerning his assignment in Tier II.[1] The grievance procedure applicable to inmate assignment in administrative segregation is contained in GDC SOP IIB09-0001, which Defendants have not provided and do not argue Plaintiff failed to follow. Furthermore, the Warden's response to grievance 208881 states that it was "dismissed" rather than denied or rejected. Doc. 15-5, p. 5. The difference between a grievance that was dismissed rather than denied is not explained by Defendant, but the Warden's grievance response to Plaintiff when he grieved a grievable issue states that the "grievance is denied." Doc. 15-6, p. 28, 30, 37, 47, 53.

The Court "is not bound to accept the truth of general allegations . . . when they are contradicted by specific factual details in attached exhibits." *Michel v. NYP Holdings, Inc*. 816 F.3d 686, 707 (11th Cir. 2016) (citing *Ironworkers Local Union 68*, 634 F.3d 1352, 1359 (11th Cir. 2011)). Accordingly, Defendants have failed to demonstrate that the unopposed facts entitle them to dismissal for failure to exhaust administrative remedies.

### Failure to State a Claim

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim show that the pleader is entitled to relief. "Rule 8's pleading standard does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Crop*. 693

---

[1] Ms. Mahoney's affidavit does not state whether assignment to administrative segregation is a grievable issue.

F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotation marks omitted). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face." *Hunt v. Amico Properties*, L.P., 814 F.3d 1213 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Iqbal*, 556 U.S. at 678). In ruling on a motion to dismiss, the court must accept "the factual allegation in the complaint as true and construe them in the light most favorable to the plaintiff. *Adinolfe v. United Tecnologies Corp*., 768 F.3d 1161, 1169 (11th Cir. 2014). Although pro se pleadings are held to a less exacting standard, "pro se litigants still have to comply with procedural pleading requirements." *Kibwika v. Broward County Sheriff's Office*, 453 F. App'x 915, 918 (11th Cir. 2012) (citing *Moton v. Cowart*, 631 F.3d 1337, 1341, n. 2 (11th Cir. 2001).

### I. Liberty Interest

Plaintiff alleges that his continued confinement in Tier II administrative segregation is in violation the due process clause of the Fourteenth Amendment. In order to bring a successful procedural due process violation through a 1983 claim challenging a prisoner's confinement, the prisoner first "must have a liberty interest created by the United States Constitution or by a state." *Walker v. Florida Parole Com'n*, 299 F. App'x 900, 901 (11th Cir. 2008) (citing *Monroe v. Thigpin*, 932 F.2d 1437, 1441 (11th Cir. 1991). The Supreme Court has identified two methods in which a prisoner's liberty interests may be deprived in relation to his confinement in a state prison. *See Sandin v. Connor*, 515 U.S. 472 (1995). The first occurs when his confinement is of a nature that he is held in excess of his court imposed sentence, and the second

9

occurs when the state deprives him of certain benefits conferred on other prisoners. *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007).

Plaintiff has not alleged that placement in administrative segregation will extend the length of his incarceration, so that method need not be analyzed in this case. For the second kind of liberty interest, "[i]t is plain that the transfer of an inmate to less amendable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Al-Amin, v. Donald*, 165 F. App'x 733 (11th Cir. 2006) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Therefore, in order for a liberty interest to be triggered by a deprivation of in-prison benefits, the deprivation must "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wallace*, 229 F. App'x at 830. (quoting *Sandin*, 515 U.S. at 484). "The touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484).

In this case, Plaintiff does not allege facts concerning the conditions of confinement experienced by those confined in general population and has not alleged sufficient facts concerning the conditions of confinement he experiences to make out a plausible claim for relief.[2] Plaintiff alleges he exists in "harsh living conditions with limited access to law library, hygiene, recreation, and programs for parole eligibility." Doc. 1, p.5. He does not allege more. Accepted as true, these allegations are insufficient to make out a plausible claim for relief as they

---

[2] The Eleventh Circuit has stated that "[a]typical and significant hardships must [] be severe relative to regular prison." *Smith v. Deemer*; 641 F. App'x 865, 868 (11th Cir. 2016) (citing *Wilkinson*, 545 U.S. at 223-24 (2005); see e.g. *Al-Amin*, 165 F. App'x at 739 (substantial similarity between general population living conditions and those in administrative segregation precluded finding of atypical and significant hardship).

are typical of segregated confinement. *See Wilkinson*, 545 U.S. 209; *Delgiudice v. Evans*, 2014 WL 4851755 (M.D. Ga. 2014) (allegation that confinement in SMU kept prisoner from law library and prevented access to phone not sufficient to state a claim); *Turner v. Upton*, 2013 WL 4852689 (M.D. Ga. 2013) (denying due process liberty interest claim based on confinement in SMU where Plaintiff was allowed to graduate to less restrictive wing and Plaintiff was not parole eligible); *Sandin*, 515 U.S. 472 (placement in administrative segregation did not create liberty interest where the general population was "locked down" 12 to 16 hours a day and Plaintiff was only there for thirty days). To the extent that Plaintiff relies on his exhibits to plead the conditions of his confinement, the inquiry focuses on the nature of the deprivation and is not "based on the language of a particular regulation." *Id. at* 481.

Plaintiff has also failed to refer to any difference between the conditions he experiences and those experienced by prisoners not in Tier II. "Atypical and significant hardships must be severe relative to regular prison," Smith, 641 F. App'x at 868 (citations omitted). Without factual allegations concerning the conditions of confinement experienced in general population or other modes of segregated confinement, there is no baseline by which Plaintiff has plausibly alleged atypical conditions imposing a significant hardship. *See e.g. Gilyard v. McLaughlin*, 2015 WL 1019910 (M.D. Ga. 2015) (granting motion to dismiss where Plaintiff failed to describe conditions of prisoners not in administrative segregation); *Watkins v. Humphrey*, 2014 WL 6998102 (M.D. Ga. 2014) (Plaintiff failed to establish violation where he failed to allege conditions of confinement experienced by those in general population).

Plaintiff's claim concerning the length of his confinement in segregation also cannot establish a liberty interest. The duration of confinement in segregation is a factor to be considered, but the Eleventh Circuit has determined that even a four-year stay in administrative

segregation does not necessarily implicate a liberty interest. *Morefield*, 404 F. App'x. 443. To the extent that Plaintiff alleges that his confinement in Tier II effects the total duration of his confinement in prison because it deprives him of parole eligibility, the Constitution does "not confer a liberty interest in parole." *Walker v. Fla. Parole Com'n*, 299 F. App'x 900, 902 (citing Monroe, 932 F.2d at 1441). State statutes and regulations may create such a liberty interest in parole if the state parole system "creates a legitimate expectation of parole." *Heard v. Georgia State Bd. Of Pardons and Paroles*, 222 F. App'x. 838, 840 (11th Cir. 2007). "Georgia's parole system [does] not create such an expectation so that Georgia inmates have no liberty interest in parole." *Id*. (internal citations omitted). Thus, Plaintiff has not plausibly alleged a protected liberty interest and his claim fails for this reason.

## II.     *Process Due and Process Received*

Even if Plaintiff has alleged sufficient facts at this stage to state a plausible protected liberty interest, he has not presented sufficient facts concerning the denial of due process. The minimum requirements of procedural process due to "prisoners facing disciplinary action . . . are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citing *Young v. Jones*, 37 F.3d 1457, 1459-60 (11th Cir. 1994)). Plaintiff concedes that he was placed in the SMU "for a disturbance" and that he was phased down into the Tier II program. Doc. 1, p. 5. Plaintiff does not allege that his initial placement in the SMU was the result of a procedurally defective process nor does he provide any information pertinent to the processes that keep him in Tier II. It is also unclear from Plaintiff's Complaint whether he has moved between phases in the Tier II program. Plaintiff has neglected to plead the issue of

procedure altogether, which is an element of this claim which Plaintiff must plausible allege[3] *Jackson v. Brewton*, 595 F. App'x 939, 942 (11th Cir. 2014) (affirming dismissal of procedural due process claim where plaintiff failed to alleged that he received constitutionally inadequate process).

Instead, Plaintiff's claim focuses on GDC Tier II policy, which states that an inmate may only be confined in Tier II for twenty-four months. Construed liberally, Plaintiff's Complaint alleges that GDOC Tier II policy limiting confinement in Tier II to twenty-four months created a liberty interest in being released at twenty-four months. It is well settled, however, that "a violation of a prison regulation without more does not state a constitutional violation." *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (citing *Edwards v. Johnson*, 209 F.3d 772 (5th Cir. 2000). "[R]egulations are not designed to confer rights on inmates" and "the search for a negative implication from mandatory language in prisoner regulations [] stray[s] from the real concerns undergirding the liberty protected by the Due Process Clause." *Sandin*, 515 U.S. 483. "[T]he Supreme court in *Sandin* made clear that mandatory language in state statutes and prison regulations is insufficient to create a protected liberty interest," *Mathews v. Moss*, 506 F. App'x 981, 984, n. 3 (11th Cir. 2013). Instead, Plaintiff is required "to show not just a violation of a state statute or regulation, but a violation of a protected liberty interest." *Moulds v. Bullard*, 452, F. App'x. 851, 855 n.1 (11th Cir. 2011). Plaintiff's factual allegations, taken as true, do not plausibly allege a violation of a protected liberty interest.

---

[3] Plaintiff does assert that he attempted to grieve that matter without response, and Plaintiff has spoken to the warden about his continued confinement. Doc. 1, p. 4 – 5.  This allegation is not enough to plausibly allege a defect in the procedure. "A prison procedure does not provide an inmate with constitutionally protected interest." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011).

### III.    *Substantive Due Process*

Although it does not appear that Plaintiff alleges a substantive due process claim, and the Court's frivolity review did not allow any such claim to proceed, Defendants have briefed the issue. Because the Court construes pro se litigant pleadings liberally, and out of an abundance of caution, the Court will address the issue.

Substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citing Moore v. East Cleveland, 431 U.S. 494, 503 (1977). Substantive due process differs from procedural due process in that "a violation of a substantive due process right . . . is complete when it occurs." *McKenney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994). Pursuant to *Sandin*, [t]he Due Process Clause standing alone confers no liberty interest in freedom from state action "taken 'within the sentence imposed.'" 515 U.S. at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Meaning, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson*, 545 U.S. at 221 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976). As discussed above, Plaintiff has not plausibly alleged atypical and significant hardship, and his claim does not implicate a constitutionally protected liberty interest. *See Smith v. Deemer*, 641 F. App'x. 865, 868 – 68 (11th Cir. 2016).

### IV.    *Mootness*

Finally, Respondent argues that Plaintiff's claim is moot because GDC policy has changed and no longer limits a term of confinement in Tier II to twenty-four months. Mootness is implicated in cases where allegedly illegal conduct has ceased. *See Lemcool v. Fla. Dept. of Corrections*, 543 F. App'x 909, 912 (11th Cir. 2013). Thus, a change in prison policy may moot

14

a complaint where it is accompanied by a cessation of challenged activity. *Id.* In this case, the change in policy appears to have accommodated the challenged activity rather than curbed it. As it is uncontested that Plaintiff remains confined in Tier II, the challenged behavior has not ceased. Plaintiff's claim, if he had one, would not be moot in virtue of the policy change.

## CONCLUSION

Because Plaintiff has not set forth "sufficient factual matter" plausibly to allege "atypical and significant hardship" or constitutionally inadequate process, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 15) be **GRANTED**, and Plaintiff's case be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, the 17th day of November, 2016.

                                                  s/ Charles H. Weigle
                                                  Charles H. Weigle
                                                  United States Magistrate Judge